26 C.C.P.A. (Patents)

## COLLINS & AIKMAN CORPORATION v. SANFORD MILLS et al.

### Patent Appeal No. 4056.

Court of Customs and Patent Appeals.

Feb. 6, 1939.

Paul J. Schmitz, of Philadelphia, Pa., for appellant.

Nathan Heard, of Boston, Mass. (C. Yardley Chittick, of Boston, Mass., of counsel), for appellees.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

The principal issue involved in this appeal from the decision of the Commissioner of Patents is whether or not appellant's alleged trade-mark "Breathing Back" which it seeks to register for use for pile fabrics in the piece consists *"merely in words or devices which are descriptive of the goods with which they are used, or of the character or quality of such goods,"* within the meaning of the trade-mark act of February 20, 1905, as amended, 15 U.S.C.A. §§ 81–109, (Italics ours.)

The application of the Collins & Aikman Corporation, appellant (hereinafter styled applicant), filed October 18, 1935, discloses the mark which it seeks to register as consisting of the said term printed in plain, uniform-sized, black, capital letters. It alleges a use of said term since September 26, 1935.

Specimens showing the trade-mark as actually used by the applicant upon the goods consists of string tags which are intended to be tied to bolts of the pile fabric, which tags contain, in five different parallel lines, the following notations: "Quality," "Pattern," "Color," "Piece," and "Yards," after which are blank spaces for the insertion of data. Following the term "Quality," apparently in typewritten caps, is the term "Breathing Back." No data appears opposite to the other notations. At the bottom of the tag displayed in large letters is applicant's registered trade-mark "Cavel."

Appellees, Sanford Mills and L. C. Chase & Company, Inc., hereinafter styled opposers, on December 31, 1935, filed notice of opposition to the registration of said term by the applicant, alleging, among other things, that Sanford Mills, and L. C. Chase & Company, Inc., are corporations of the State of Maine, doing business in various places throughout the United States and that Chase & Company, Inc., is a wholly owned subsidiary of Sanford Mills; that they believed they would be damaged by registration of the alleged trade-mark on account of the fact that "Sanford Mills manufactured, and L. C. Chase & Company, Inc. sold to customers in the United States, pile fabrics in the piece having on the back thereof a coating of adhesive material pervious to gases and air and substantially impervious to water and thus having the characteristic of a 'breathing back' and that this term 'Breathing Back' was prior to and since said date [September 26, 1935] employed by opposers, by purchasers, by prospective purchasers, by other manufacturers and by the public in the United States as indicative of and properly descriptive of the quality or characteristic of the said goods"; that the term "Breathing Back" did not indicate origin but was properly descriptive of the quality or characteristics of opposer's and applicant's goods and its use of the term was to describe such goods; that the term is not registrable by any one by reason of the prohibitory provision of section 5 of said trade-mark act, 15 U.S.C.A. § 85; that applicant's specimens filed with the application show that the term "Breathing Back" was used by applicant to indicate quality and was not used as a trade-mark, and that the registration and use of the term by applicant as a trade-mark would be misleading to purchasers and to the public and would be an illegal invasion of the rights of opposers.

Applicant in its answer to the notice of opposition raises the question of misjoinder of parties in the notice of opposition,

denies that opposers would be damaged by the registration of the mark, alleges that opposers did not show any use of the mark on any goods, stated that the term "Breathing Back" is not descriptive of the quality or any characteristic of the goods; and denies that applicant's specimens show the use of "Breathing Back" as indicating quality of the goods.

Considerable testimony was offered by both parties and numerous exhibits bearing on different phases of the issue presented by the pleadings were also introduced.

The Examiner of Interferences after considering the evidence, the exhibits and other matters relating to the use and the meaning of the term "Breathing Back" held the same to be descriptive within the prohibitive clause of said section 5, supra. He pointed out that L. C. Chase & Company, Inc. was the selling agent of Sanford Mills; that the latter owned the stock of the former, and that L. C. Chase & Company, Inc., by reason of this relationship, had sufficient interest to enable it to join with Sanford Mills in the opposition. He further held that mere oral use of the term "Breathing Back" in trade is sufficient to enable the user to qualify as an opposer where the opposition is based upon descriptiveness of the alleged trademark. He accordingly sustained the notice of opposition.

The First Assistant Commissioner, acting for the Commissioner of Patents, affirmed the decision of the Examiner of Interferences in sustaining the opposition on the ground that the alleged mark was a descriptive term and fell under said section 5, supra. He furthermore stated that if he were not convinced that the mark was descriptive, he was satisfied that the applicant had not shown a trade-mark use of the same.

In view of our conclusion that the term "Breathing Back" is descriptive of the goods upon which applicant alleges use of the said term, and since the concurring holdings of the Examiner of Interferences and the commissioner are to the effect that the mark may not be registered for the reason that it is descriptive, it will not be necessary for us to consider any other issue than that relating to the question of whether or not the term "Breathing Back" consists merely in words or devices descriptive of the goods upon which applicant alleges its said use.

■ It has been frequently held by this court and elsewhere that the Patent Office tribunals are not limited in an opposition proceeding to the consideration of the precise questions presented in the notice of opposition; that on the contrary in such proceedings they may dispose of any question relating to the proposed registration that might be considered in an ex parte case. Rose Nerenstone Bookman, etc. v. Oakland Chemical Co., 40 F.2d 1006, 17 C.C.P.A., Patents, 1213; California Cyanide Co. v. American Cyanamid Co., 40 F.2d 1013, 17 C.C.P.A., Patents, 1198. In other words, the Patent Office tribunals having refused registration of the legend by reason of its descriptive character, as they had the right to do regardless of the grounds of opposition, it is not material, under the particular facts of this case, whether any of the contentions of the applicant, other than that relating to descriptiveness, are sound or otherwise.

■ It follows from the foregoing, that a conclusion here that the term sought to be registered is descriptive of the goods upon which the applicant alleges a trade-mark use, within the meaning of section 5, supra, requires that the decision of the commissioner which is here appealed from must be affirmed. The record is replete with testimony and exhibits which have a direct bearing upon this question. It will not be necessary here to state in detail all the facts shown by the record. Prior to any alleged use by appellant, the term "breathe" had a definite meaning when applied to leather and certain fabrics including pile fabrics. It had reference to a porous quality of the material which permitted the free passage therethrough of air or gases. It had long been said of leather that it had a *breathing* quality and when artificial leather was made the makers attempted to give it and did give it such a porous characteristic as to cause it to have the breathing quality similar to that of leather.

Many years prior to applicant's use of the disputed term, pile fabrics were used for upholstery generally and also for upholstering the cushions and seats of automobiles. Shortly before applicant's alleged use of the term, when automobile manufacturers were considering the merits of different kinds of pile fabrics for upholstery work in automobiles, it was realized that if the back was completely covered so that there was no porosity or air-

permeability through the same, it would not have a *breathing* quality. Long before applicant's alleged use of the term those interested in the manufacture and use of artificial leather, coated fabrics, etc., recognized the advisability of retaining the good results of having a coated back to the article and at the same time have it so made that by reason of the porous character of the back the article would breathe like leather and would thus permit the passage of air and gases. The record discloses that just prior to the alleged use of the term by the applicant, the question of making and using a pile fabric with a coated back which would be sufficiently porous to permit breathing was one of considerable importance to the automobile industry and that the terms "breathing" and "breathing back" were very frequently applied in referring to the characteristics of the material to be used. In other words, the automobile industry, as well as the pile fabric manufacturers, during a considerable period of time immediately prior to the date when applicant first used its term as alleged, described pile fabrics with a porous back by employing the terms "breathe" and "breathing" with the same meaning as the terms had when applied to leather and other articles.

Not only does the testimony of record show most of the facts heretofore stated, but the exhibits in the record we think conclusively support opposer's contentions and the findings of the tribunals below in this particular. Applicant's witness Chamberlain concedes that the term "back" as applied to a pile fabric "would be that part of the material that the pile is fastened into." He stated: "I would say the back of the upholstery is the reverse side of the face of it, or the side the pile projects from." The testimony of other witnesses of the applicant and of opposers was to the same effect. The record conclusively shows that applicant's pile fabric upon which the mark is alleged to have been used has a thin coating of a rubber-like compound which acts to hold the pile firmly in the back; that it is so arranged that the fabric and the back thereof has sufficient porosity as to permit the passage of air and gases, and that the term "Breathing Back" fitly and aptly describes a characteristic or quality of applicant's goods.

As before stated, the terms "breathe" and "breathing" have since a very early date been used to describe the porous character of leather and for many years prior to applicant's alleged use of the term they had been frequently applied in describing the character of certain coated textile articles. In the patent of record to Gibbons et al., No. 1,427,754, of August 29, 1922, which related to a rubber-compound or pyroxylin-compound coated fabric, it was stated:

"* * * But the rubber composition as well as the other types mentioned have all been unsuitable for wearing apparel, upholstery and like uses on account of their inability to 'breathe' after the fashion of leather. * * *

"* * *, the porosity, transpiration, or air-permeability (however its 'breathing' quality may be termed) is believed to be due * * *."

The patent to Clifford, No. 1,863,469, of June 14, 1932, related to the production of a textile fabric which would simulate leather by treating the same with rubber compounds, etc., in such a way that as stated by the inventor: "* * * The material has sufficient porosity to cause it to breathe like leather * * *."

In the patent to Ayers, No. 2,018,245 of October 22, 1935 (application for which was filed May 6, 1933), relating to the art of shoe stiffening and more particularly to the stiffening or reinforcement of that part of the shoe termed a "counter," a felted fibrous base impregnated with rubber was used, and the inventor stated that:

"* * * Such a counter stock simulates leather in many important respects, including appearance, feel, residual porosity or 'breathing' quality, toughness, pliability," etc. The term "'breathing' quality" is not only used in the specification of the Ayers patent but also in the claims.

In the patent to Linscott et al., No. 2,032,941, of March 3, 1936 (application for which was filed February 7, 1935), relating to a thin film or sheet of rubber with at least 1,000 perforations per square inch, the inventor refers to the sheet in the following language: "* * * Such a film which appears superficially to be impervious permits 'breathing' through it when applied to the body * * *."

Richter et al. in their patent No. 1,843,372, of February 2, 1932, application filed September 27, 1929, relating to artificial leather, state that such leather intended for an inner sole for foot wear should have among other things sufficient porosity "to

permit breathing of the foot and to absorb perspiration therefrom."

In the article "Raincoats Again" in the India Rubber World, issue of December 1, 1932, relating to rubber-coated fabric for raincoats, it is said: "* * * a garment that sheds water well, but is still porous enough to breathe would surely be more comfortable. * * *"

In Respro, Inc. v. Vulcan Proofing Co., D.C., 1 F.Supp. 45, Judge Campbell, in speaking of the invention of a woven fabric in which the pile was formed by napping and in which the fabric was treated with rubber and used as a substitute for leather, said [page 47]: "The product of the process of the patent in suit possesses in combination many valuable qualities and attributes, strength, moldability, porosity, plumpness, softness, springiness, resiliency, breathing qualities, nonraveling of edges, and the appearance of leather which are the direct result of the process by which it is produced."

It is needless to further point out that the term "breathing" with reference to various articles having a porous characteristic was in very frequent use prior to applicant's alleged use on its goods. The use of the term in describing the quality or characteristics of the back of pile fabrics used in upholstering automobiles increased greatly just prior to and during the period when applicant first began to use the term in the manner alleged. The record shows that most automobile manufacturers, prior to applicant's alleged use of the term, were using the term in discussing the different kinds of pile fabric upholstery material which they were using or intended to use.

By pointing out herein that the terms "breathe" and "breathing" were frequently used in describing numerous different articles prior to the alleged use of applicant, we do not mean to suggest that if the terms may be said to be truly descriptive of applicant's and opposer's goods, it is necessary to prove that someone other than the applicant had priority in the use of the terms. The fact that they were used in a descriptive way prior to appellant's alleged use goes to the question as to whether or not the terms are in fact descriptive. It is a consideration which has a bearing upon the merits of applicant's contention that whenever used the term in controversy indicated origin in the applicant.

Applicant attacks the evidentiary competency of some of appellee's exhibits which show the use of the term in connection with artificial leather, shoes, etc. By way of answer thereto it is sufficient to say that where the term "breathing" or "breathe" was used in the questioned exhibits, it was used to describe the porous quality of the article, the characteristic which permitted the passage of air, gases, etc. Applicant has shown no other use for the term "breathing" than that shown in the exhibits. The word "back" describes a part of the article sold.

We are of the opinion that "Breathing Back" as applied to applicant's goods does nothing more than to describe the character of the back of applicant's pile fabric which, by reason of its porosity, permits breathing or passage of the air through the back. If the article breathes through the back, it may be said to be a "breathing back" article and it seems to us that the specimens which applicant has filed in connection with its application suggest strongly that when applicant sold its pile fabric it told its customers that it had the quality of having a breathing back.

Applicant argues that the mark is not merely descriptive insofar as it has proven by certain witnesses that to them the term "Breathing Back" or "breathing" in connection with automobile fabrics signifies the origin of the goods in the applicant. It may be that applicant might, by long-continued use, under certain circumstances, lend to its alleged mark a secondary meaning and it is possible that the testimony of applicant's witnesses, stating that the mark indicated origin in applicant, was based upon their knowledge only of the use to which the alleged mark had been put by the applicant. Secondary meaning does not supply a valid ground for the registration of a mark not otherwise registrable, under the trade-mark registration act at bar. Barber-Colman Co. v. Overhead Door Corporation, 65 F.2d 147, 20 C. C.P.A., Patents, 1118. It would be a queer anomaly if appellant could adopt the use of a descriptive term when others were rightfully using it or when they had the right to use it in connection with their business transactions, and by less than a month's use acquire the exclusive right to its use.

We conclude, therefore, that the term falls squarely within the prohibition of the registration statute and that the Patent Office tribunals properly denied registration thereof, and the decision appealed from,

which in effect denies registration, is affirmed.

Affirmed.